UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BERRY TYLER a/k/a<br>WILLIAM R. TYLER,<br><br>   Plaintiff,<br><br>   v.<br><br>LAWRENCE, *et al.*,<br><br>   Defendants. | CAUSE NO. 2:20-CV-194-PPS-JPK |

## OPINION AND ORDER

Berry Tyler, also known as William R. Tyler, is a prisoner without a lawyer. He filed a complaint against the commander and unnamed staff members of the Porter County Jail while he was confined there.[1] ECF 1. Because the complaint was unsigned, I directed him to file a signed one. ECF 2. Instead of filing one signed complaint, he filed two on the same day which appear to contain many of the same claims with slightly different wording in each (ECF 5 & ECF 6), so I directed him to resolve his filing fee status and to file a notice with the court indicating which complaint he would like to proceed with. ECF 7. He did not file the notice or copies of his trust fund ledgers by the deadline, but he did send the court letters regarding a change of address, so the magistrate judge granted him additional time to resolve the issues. ECF 11. In response to that order, Tyler sent the court a letter indicating "complaint 6 is just a continuance of complaint 5." ECF 13 at 1. He also states that he sent his trust fund ledgers from the Jail

---

[1] He has since been transferred to the Richmond State Hospital. ECF 8.

"multiple times" and asks the court to order the Richmond State Hospital to send the ledgers. *Id.*

The court's Local Rules prohibit the piecemeal amendment of complaints. N.D. Ind. L.R. 15-1. However, because Tyler is proceeding without an attorney, I will construe his "continuance" (ECF 6) as an amendment to the first docketed complaint (ECF 5) and proceed to screen the later filed document. *See* Fed. R. Civ. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course within . . . 21 days after serving it."). As to his filing fee status, he has not filed any ledgers in this case. However, because he indicates that he has attempted to do so multiple times, Tyler will be granted leave to proceed *in forma pauperis* via separate order.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotations and citation omitted). A plaintiff may "plead himself out of court" if he pleads facts that preclude relief. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

In his amended complaint, Tyler alleges that a variety of unsatisfactory conditions exist at the Porter County Jail, that he was denied pain medication and bloodwork, and that guards sprayed him with mace.[2] He has sued Jail Commander Lawrence and the "Porter County Jail and Staff" for monetary damages and injunctive relief to "fix the problems." ECF 6 at 1, 4. Tyler lists himself as "confined awaiting trial." *Id*. at 4. Accordingly, because Tyler is a pretrial detainee, I must assess his claims under the Fourteenth Amendment. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "A pretrial condition can amount to punishment in two ways: first, if it is 'imposed for the purpose of punishment,' or second, if the condition 'is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment.'" *Id*. (quoting *Bell*, 441 U.S. at 538–39). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendants "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendants' conduct was

---

[2] At least some of these claims appear to be unrelated, *see George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), but that issue will be addressed below.

objectively unreasonable. *Miranda v. Cty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-74 (2015); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley's* objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees). However, "negligent conduct does not offend the Due Process Clause," so a showing of negligence or even gross negligence will not suffice. *Miranda*, 900 F.3d at 353.

Here, according to Tyler, there is mold in the showers and non-working toilets in two of the three cells he references. One of the toilets has human waste on the plastic cover. There are items in the food such as fingernails, rubber pieces, plastic shavings, and little pieces of paper. The stems are left on the green beans, which caused Tyler's teeth to "break and chip." ECF 6 at 2. Also, when they run low on food, water is added to the trays. Overall, the food, which is comprised of "mostly filler" like bread and cakes, has "little to none (sic) nutritional value." *Id*.

Tyler also complains that he was housed around individuals with Covid-19, Hepatitis C, and HIV. He states that there is no vision care in the facility and that the dentist "only wants to pull teeth and not fix problems." *Id*. He alleges the jail charges $15 for prescriptions, $15 to see a doctor or dentist, and $5 to see a nurse. He states that there are no medications for pain management and that the medication they did give him "mess[ed] with my head and ma[de] me sleep." *Id*. at 3. Tyler alleges they refused

4

to draw his blood to find out what was wrong with him even though he was in pain and his vision was deteriorating. He states he has cancer, but it is in remission.[3]

Tyler also alleges he pushed the call button to ask about dates for his legal paperwork, but the guards told him it wasn't an emergency. Later, when it was time to lockdown, Tyler stated, "I'm not going," so he was sprayed with mace "all because I needed info and dates." *Id.*

To start, Tyler cannot proceed against the Porter County Jail. Although the Porter County Jail is where the events in question occurred, the jail is a building, not an individual or even a policy-making unit of government that can be sued pursuant to 42 U.S.C. § 1983. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (jail is "a non-suable entity"); *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (discussing non-suable entities applying Indiana law).

Next, Tyler names the Porter County Jail "staff." However, he does not identify any of the unnamed staff members (even by title or description) in his amended complaint. Tyler cannot proceed against unknown defendants. *See Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) ("[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." (internal quotations and citations omitted)). Moreover, even if he had appropriately identified

---

[3] Tyler references issues with his "mental health meds" too (ECF 6 at 3), but he is already attempting to proceed on those claims in a separate case. *See Tyler v. Porter County Jail*, No. 2:19-CV-450-JVB-JEM (filed Nov. 27, 2019).

5

the staff members, he has not described any specific unconstitutional actions (or inaction) by any specific individual. He repeatedly refers to "they" in the general sense when describing his issues, which is insufficient to state a claim. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."); *see also Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (noting that a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level") (internal quotation marks and citation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (facts must be sufficient so that a claim is "plausible on its face").

This leaves Jail Commander Lawrence. Although Tyler requests injunctive relief to "fix [the] problems," he was transferred from the Porter County Jail to the Richmond State Hospital shortly after submitting his complaints. *See* ECF 8 & ECF 9. Accordingly, he may not bring a claim for injunctive relief against Commander Lawrence in his official capacity as he is no longer being housed at the Porter County Jail. "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (internal quotations and citation omitted); *see also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). "Allegations of a likely retransfer may not be based on mere speculation." *Higgason*, 83 F.3d at 811. There is no indication that Tyler will be transferred back to the Porter County Jail. Therefore, any injunctive relief he seeks against Commander Lawrence is now moot.

As to a claim for monetary damages against Commander Lawrence in his individual capacity, Tyler has not plausibly alleged Commander Lawrence participated in the events or had any knowledge of the issues described. He cannot be held liable simply because he oversees the operations of the jail or supervises other correctional officers because there is no general respondeat superior liability under 42 U.S.C. § 1983. *See Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). As noted above, "[o]nly persons who cause or participate in the violations are responsible." *George*, 507 F.3d at 609. Thus, he has not stated any plausible claims against Commander Lawrence.

Even removing the respondeat superior liability problem, the complaint falls short in many respects. The allegations regarding the prison conditions are described only in the most general sense, and it is unclear how Tyler was harmed by them. He alleges the showers were moldy and there was waste on the toilet cover, but these vague allegations do not describe the degree of uncleanliness necessary to support a constitutional violation. He alleges some of the toilets didn't work but he doesn't allege he personally was unable to use one when needed. He alleges the food was deficient, but he doesn't allege he was suffering from malnutrition or dehydration as a result of it.[4] He doesn't provide any dates, timeframes, or supporting details regarding how he, personally, was affected by these conditions. *See e.g. Smith v. Dart*, 803 F.3d 304, 312 (7th

---

[4] He does allege the stems left on the green beans caused his teeth to break and chip, but this allegation is simply not plausible. The fact he was given green beans also undercuts his assertion that he was provided with only "filler" foods such as breads and cakes. *See Edwards*, 478 F.3d at 830 (A plaintiff can plead himself out of court if he pleads facts that preclude relief).

7

Cir. 2015) (inmate failed to state a claim when he alleged the jail was infested with mice and cockroaches but did not provide sufficient details which "left [the court] in the dark as to how extensive the infestations are and how the pests affect him"); *see also Atkins*, 631 F.3d at 832*; Iqbal*, 556 U.S. at 678. Similarly, Tyler alleges he was placed around inmates with various diseases, but he doesn't allege any details to show he was directly exposed to any serious risk of harm, nor does he allege he was sickened as a result of his placement. *Id*.

Regarding his medical needs, claims of inadequate medical care while in pretrial detention are subject to the objective-reasonableness standard described above. *Miranda*, 900 F.3d at 352. Here, however, Tyler's complaints are only described in the most vague terms. He alleges his body hurts and his vision is deteriorating, but he doesn't provide any additional details about his afflictions other than the fact that his cancer is in remission. He alleges "they" wouldn't draw bloodwork or give him pain medication, but he doesn't allege if, when, or how he alerted any medical staff or prison officials about his specific issues. He alleges the jail charges inmates money to see doctors/nurses and to obtain prescriptions, but he doesn't allege he was unable to pay for necessary visits or medications[5] or that he failed to receive any care while he was at the jail. In fact, he admits he received some type of unspecified medication (although he didn't like how it made him feel), which undercuts both the suggestion that copays

---

[5] Tyler will be allowed to proceed in forma pauperis, but no ledgers were ever received in this case. He does not provide any specific information regarding his financial situation in his amended complaint.

were problematic for him and that he was being ignored by the staff entirely. Even giving Tyler the benefit of the inferences to which he is entitled at this stage, these threadbare allegations of unanswered medical needs do not state a plausible claim. *See generally Iqbal*, 556 U.S. at 678; *Atkins*, 631 F.3d at 832; *see also Edwards*, 478 F.3d at 830 (A plaintiff can plead himself out of court if he pleads facts that preclude relief).

Last, Tyler attempts to advance an excessive force claim against unnamed guards. Under the Fourteenth Amendment, he must show the defendants acted with "a purposeful, a knowing, or possibly a reckless state of mind" and that the force used was "objectively unreasonable" based on the "facts and circumstances of [his] case," whether or not defendants were subjectively aware their conduct crossed a line. *Kingsley*, 576 U.S. at 397 (quotation marks and citation omitted). Here, he alleges he was sprayed with mace because he pressed the emergency button and asked for information. However, he also admits he refused to go to lockdown when ordered to do so. Without additional information regarding the interaction, I cannot plausibly infer that the force used was objectively unreasonable. *See generally Iqbal*, 556 U.S. at 678; *Atkins*, 631 F.3d at 832.

Although the current complaint states no valid claims, I will give Tyler an opportunity to file a second amended complaint. *See Luevano v. Wal-Mart*, 722 F.3d 1014, 1022–25 (7th Cir. 2013). If he chooses to do so, it should be done on the court's approved form, which will be sent to him by the clerk. The second amended complaint must provide as much detail as possible about the events in question—explaining what happened, when it happened, where it happened, who was involved, how the events

9

that transpired personally injured him, and the extent of his injuries. Of note, a second amended complaint should only be filed if Tyler believes the deficiencies set forth in this order can be rectified.

As a final matter, it is unclear how the three seemingly distinct groups of claims— jail conditions, medical issues, and the use of mace by the guards—are related if Commander Lawrence is not personally involved. It is true that "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . . .." *George*, 507 F.3d at 607; *see also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017). Tyler was already cautioned about a relatedness issue in another case, *see Tyler v. Porter County Jail*, No. 2:19-CV-450-JVB-JEM (filed Nov. 27, 2019) at ECF 11, and this complaint appears to be an attempt to separate at least some of his claims. However, unless he intends to name a defendant (or defendants) common to all claims or can establish a connection between the seemingly unrelated circumstances he is suing about when he files a second amended complaint, these claims do not belong in the same lawsuit either.

Therefore, if Tyler does choose to file a second amended complaint, he needs to decide which related claims and associated defendants he wants to pursue in this case. *See Katz v. Gerardi*, 552 F.3d 558, 563 (7th Cir. 2009) and *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). The second amended complaint should only include a discussion of those related claims and defendants. He should not write about other events and conditions at the jail which are not directly related to the claim against

the named defendant or defendants. If he believes those other events or conditions state a claim, he needs to file separate lawsuits.[6]

**ACCORDINGLY**, the court:

(1) **DIRECTS** the clerk to send Berry Tyler, a/k/a William R. Tyler, a blank **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form with this cause number on it;

(2) **GRANTS** Berry Tyler, a/k/a William R. Tyler, until **May 7, 2021**, to file a second amended complaint as described above; and

(3) **CAUTIONS** Berry Tyler, a/k/a William R. Tyler, that if no response is received by the deadline, this case will be dismissed without further notice pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim upon which relief can be granted.

**SO ORDERED on April 7, 2021.**

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

---

[6] If he files a second amended complaint and it again asserts unrelated claims, I will pick which claims (if any) will proceed in this case. *See Katz*, 552 F.3d at 563 and *Wheeler*, 689 F.3d at 683